UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KENNETH JENSEN, and <br> JOSEPH M. CONNOLLY, <br><br> Plaintiffs, <br><br> v. <br><br> UNIFUND CCR PARTNERS, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) No. 06 C 811 <br> ) <br> ) Judge George M. Marovich <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Kenneth Jensen ("Jensen") and Joseph M. Connolly ("Connolly") filed suit against defendant Unifund CCR Partners ("Unifund") alleging that Unifund violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1962, et seq. Defendant has filed a motion for summary judgment. For the reasons set forth below, the Court grants defendant's motion for summary judgment.

**I. Background**

Unless otherwise noted, the following facts are undisputed.

Defendant Unifund is a New York partnership in the business of buying and collecting on debt. Unifund does not issue credit cards and does not issue charge accounts. Among the debts purchased by Unifund was a portfolio of charged-off receivables from Bank One. That portfolio included plaintiff Kenneth Jensen's First USA credit card account. Unifund also purchased from Citibank a portfolio of charged-off receivables. That portfolio included the account plaintiff Joseph Connolly opened to make a purchase from Radio Shack.

Unifund instituted legal proceedings against both Jensen and Connolly. On December 7, 2004, Unifund filed suit against Jensen in the Circuit Court of Cook County. Jensen was served with the complaint on March 9, 2005. In its complaint against Jensen, Unifund alleged that Jensen "utilized a charge account and/or line of credit issued by Plaintiff whereby [Jensen] could charge goods and services to their [sic] account and/or receive cash advances." Attached to the complaint was an affidavit signed by Christina Bryan ("Bryan"), a Unifund employee. The affidavit stated that she was an "agent" for Unifund, that she had "custody and control of the files" related to Jensen's account, that she had "personal knowledge of all the facts and circumstances in connection" with the case and that the "files are maintained in the usual and ordinary course of business." Also attached to the complaint was a "Unifund Statement," which stated that Jensen owed $11,524.42 and that Unifund "purchased" the account from First USA bank.

On February 13, 2006, Jensen filed suit in this Court. In this suit, Jensen alleges that Unifund violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e, 1692e(2) and 1692e(10), by making false representations in the state court complaint (and the attachments thereto) that Unifund filed against him.

Unifund instituted legal proceedings against Connolly, as well. On January 25, 2005, Unifund filed suit against Connolly in the Circuit Court of Cook County. Connolly was served with the complaint on April 22, 2005. In its three-page complaint, Unifund alleged that Connolly "utilized a charge account and/or line of credit issued by Plaintiff whereby [Connolly] could charge goods and services to their [sic] account and/or receive cash advances." Attached to the complaint against Connolly was an affidavit signed by Bryan. The affidavit stated that

Bryan was an "agent" for Unifund, that she had "custody and control of the files" relating to the debt, that she had "personal knowledge of the facts and circumstances in connection with the case" and that the "files are maintained in the usual and ordinary course of business." Also attached to the complaint was a "Statement of Account," which stated that Connolly owed $1,242.13 and that the original creditor was Radio Shack.

Connolly joined this suit. Specifically, Jensen sought and was granted leave to amend his complaint to add a second plaintiff, Connolly. Jensen and Connolly filed their amended complaint on May 12, 2006. Connolly, like Jensen, alleges that Unifund violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e, 1692e(2) and 1692e(10), by making false representations in the state court complaint (and the attachments thereto) that Unifund filed against Connolly.

## II.     Standard on a motion for summary judgment

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a

verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. Discussion

Congress passed the Fair Debt Collection Practices Act "to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692.

Among other things, the FDCPA makes unlawful the "false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(a). It also makes unlawful the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). "Section 1692e applies even when a false representation was unintentional." *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000). In *Gearing*, the Seventh Circuit affirmed an award to the debtor where the debt collector had filed against the debtor a lawsuit in which the debt collector falsely alleged that it was a subrogee of the original creditor. *Id.*

### A. Statute of limitations

Unifund argues that plaintiffs' claims are barred by the FDCPA's one-year statute of limitations. The statute states that "[a]n action to enforce any liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The statements plaintiffs allege to be "false representations" in violation of the FDCPA are statements Unifund made in its complaints against Jensen and Connolly. As

Unifund points out, it filed its complaint against Jensen on December 7, 2004 and its complaint against Connolly on January 25, 2005. Jensen filed this suit against Unifund on February 13, 2006–more than one year after Unifund filed its suit against him. Connolly later joined the suit, but, again, plaintiffs' original complaint was filed more than one year after Unifund filed its suit against Connolly. Plaintiffs counter that their claims are not barred by the statute of limitations because their suit here was filed within one year after each was *served* with Unifund's complaint. Thus, the Court must determine whether the statute of limitations begins to run when Unifund's suit was *filed* or when it was *served* on Jensen and Connolly.

As usual, the Court begins with the statute. The statute states that "[a]n action to enforce any liability created by this subchapter may be brought . . . within one year *from the date on which the violation occurs*." 15 U.S.C. § 1692k(d) (emphasis added). In another context, the Supreme Court has stated that an "act 'occur[s]' on the day that it 'happen[s]'." *National RR Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) (interpreting Title VII's statute of limitations). Each plaintiff alleges a nearly-identical violation: that Unifund made statements in its complaint that are allegedly false representations. Each violation happened on the day Unifund filed the complaint containing the alleged false representations. That is the day Unifund made the alleged false representations, even if the plaintiff found out about the representations later. It strikes the Court as imprecise to say that the violation (Unifund's statements in its complaint) "occur[red]" at some point *after* Unifund filed its complaint when it is the statements in the complaint that are the alleged violation. The Court concludes that the violation "occur[red]" when Unifund filed its complaint.

This conclusion is consistent with the way courts have applied this statute of limitations in the context of *dunning* letters–the letters debt collectors sometimes send to debtors to encourage payment. When a debt collector writes a letter that is alleged to contain false representations in violation of 15 U.S.C. § 1692e, the statute of limitations begins to run when the creditor *mails* the letter, not when the alleged debtor *receives* the mail. *Mattson v. U.S. West Communications, Inc.*, 967 F.2d 259, 261 (8th Cir. 1992); *Friedman v. HHL Financial Serv., Inc.*, Case No. 93 C 1545, 1993 WL 286487 at *2 (N.D. Ill. July 29, 1993). These courts reason that the last opportunity the creditor has to comply with the act is when it mails the letter.

This Court's conclusion is also consistent with the courts that have concluded that when the alleged false representation is made in a complaint, the statute of limitations runs from the *filing* not the *service* of the complaint. *See Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997); *Garrett v. Empire Cooler Serv., Inc.*, Case No. 03 C 9137, 2004 WL 838032 at *1 (N.D. Ill. April 16, 2004). In *Naas*, the Ninth Circuit explained that the violation was the bringing of the suit, such that the statute of limitations should begin to run upon the filing of the complaint. *Naas*, 130 F.3d at 893. The Ninth Circuit also noted that its decision was consistent with the rule for dunning letters. The Court is aware, however, that the Tenth Circuit reached a different conclusion. *See Johnson v. Riddle*, 305 F.3d 1107, 1113-14 (10th Cir. 2002). In *Johnson*, the Tenth Circuit relied not on the meaning of when a "violation occurs" but on the meaning of an "attempt to collect a debt." The Tenth Circuit concluded–and the debt collector in that case conceded–that merely filing a suit could never be an "attempt to collect" a debt because the debt collector could change its mind and dismiss the suit before serving the plaintiff. But the debt collector could also change its mind *after* the creditor was served and dismiss the suit, say,

before the creditor answers. That it later changed its mind does not make the filing of the suit any less an attempt to collect a debt–at least not within this Court's view of the plain meaning of "attempt to collect" a debt. The Tenth Circuit was also concerned that the plaintiff might not become aware of the suit until after the one-year statute of limitations had run because the debt collector might try to hide the suit from the debtor. The debt collector, however, has a strong incentive to serve the debtor quickly: it wants to collect on the debt. Furthermore, if the creditor attempted to conceal the suit, the running of the statute of limitations could be equitably tolled.

For these reasons, this Court agrees with the courts that have concluded that the statute of limitations begins to run with the *filing* rather than the *service* of a complaint containing allegedly false representations. It seems to this Court that in arguing that the violation occurred when they were served with their respective complaints, the plaintiffs are really arguing in favor of a discovery rule. The Seventh Circuit has explained the issue this way:

> Accrual is the date on which the statute of limitations begins to run. It is not the date on which the wrong that injures the plaintiff occurs, but the date–often the same, but sometimes later–on which the plaintiff discovers that he has been injured. The rule that postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured is the 'discovery rule' of federal common law, which is read into statutes of limitations in federal-questions cases . . . in the absence of a contrary directive from Congress.

*Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (1991). The Supreme Court has since considered whether a discovery rule can be grafted onto a federal statute of limitations. In *TRW Inc. v. Andrews*, the Supreme Court declined to decide whether a presumption in favor of a discovery rule existed. 534 U.S. 19, 27 (2001). It noted, however, that it had approved the discovery rule only in latent disease and medical malpractice cases where "the cry for [such a] rule is the loudest." *TRW*, 534 U.S. at 27. The Supreme Court also noted that it had never

endorsed the idea that "Congress can convey its refusal to adopt the discovery rule only by explicit command, rather than by implication from the structure or text of the particular statute." *TRW*, 534 U.S. at 27-28. In *TRW*, the Supreme Court declined to write a discovery rule into the Fair Credit Reporting Act because it did "not govern an area of the law that cries out for application of a discovery rule" and because it concluded that Congress did not want a discovery rule added. *Id.* The Supreme Court explained that Congress intended to preclude a discovery rule for the general statute of limitations because it also included a discovery statute of limitations for willful misrepresentations. *TRW*, 534 U.S. at 28.

Here, the Court does not think it should graft a discovery rule onto the statute of limitations in the Fair Debt Collection Reporting Act. First, like the Fair Credit Reporting Act, violations of the Fair Debt Collection Reporting Act do not "cry out" for a discovery rule. Second, the Court is not aware of any federal court that has grafted a discovery rule onto the FDCPA statute of limitations. Third, the fact that Congress set the statute of limitations to run "from the date on which the *violation occurs*" (emphasis added) suggests that it did not want a discovery rule. This is particularly true given that Congress has evidenced its ability to write a discovery statute of limitations by including one in, among other statutes, the Fair Credit Reporting Act and the Employee Retirement Income Security Act. *See* 15 U.S.C. § 1681p ("where a defendant has materially and willfully misrepresented any information required under this subchapter . . . the action may be brought at any time within two years after discovery by the individual of the representation."); 29 U.S.C. § 1113(2) (particular suit must be brought within "six years after the date of discovery of such breach or violation.").

The statute of limitations on plaintiffs' claims runs from the date Unifund filed its suit against each respective plaintiff. It is undisputed that Unifund filed its suit against Jensen on December 7, 2004. It is undisputed that Unifund filed its suit against Connolly on January 25, 2005. It is undisputed that this suit was filed on February 13, 2006. Accordingly, the undisputed evidence show that plaintiffs' claims are time-barred and that Unifund is entitled to summary judgment on plaintiffs' claims against it. The Court grants Unifund's motion for summary judgment.

## IV. Conclusion

For the reasons set forth above, the Court grants defendant Unifund's motion for summary judgment.

ENTER:

_George M. Marovich_
George M. Marovich
United States District Judge

DATED: March 30, 2007